IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EVETTE DELEON                                }<br>                                                         }<br>            Plaintiff,                            }<br>                                                         }<br>v.                                                     }<br>                                                         }<br>CLEAR LAKE REGIONAL MEDICAL   }<br>CENTER, INC.                                 }<br>                                                         }<br>            Defendant.                         } | CIVIL ACTION NO. H-04-2841 |

### MEMORANDUM AND ORDER ON SUMMARY JUDGMENT

Pending before the court is Defendant Clear Lake Regional Medical Center, Inc.'s (Hereinafter "Clear Lake" or "the Hospital") Motion for Summary Judgment and Brief in Support, filed August 31, 2005 (Doc. 16). Evette DeLeon ("DeLeon" or "Plaintiff"), the Plaintiff in the instant action, now acting *pro se* since the withdrawal of her counsel, has not responded as of today's date, October 4, 2005. The court notes that under Local Rules 7.3 and 7.4, failure to file an opposition will be treated by the court as a non-opposition to the Motion for Summary Judgment. This Motion for Summary Judgment is now ripe for ruling, and the court will GRANT such Motion, though it will note several additional matters of importance.

On May 3, 2005, the counsel for Plaintiff, David A. Slaughter, Esq., requested leave to withdraw (Doc. 13), which the court subsequently granted on May 5, 2005 (Doc. 14). Clear Lake had filed a non-opposition (Doc. 12) to the motion to withdraw in which it described "additional details." Clear Lake stated it had taken the deposition of DeLeon on April 12, 2005, at which time DeLeon perjured herself on numerous occasions, including several admissions that she was lying *while* she was under oath. (Doc. 12, ¶ 2.) Clear Lake asserted it forwarded a letter to Mr. Slaughter on or about April 14, 2005, affording an opportunity to voluntarily dismiss the action "in lieu of Defendant filing a motion seeking sanctions for discovery abuses and an order of contempt, and attorney's fees." (*Id*. at ¶ 3; *See also* Ex. A.) Clear Lake further asserts that Mr. Slaughter contacted Defendant "to advise that Plaintiff had agreed to dismiss the present suit with

prejudice in the near future," which Defendant's counsel memorialized in a letter sent to Mr. Slaughter that day. (*Id.* at ¶ 4; *See also* Ex. B.) Counsel for Defenant notes that DeLeon has still not executed a voluntary Motion to Dismiss with Prejudice. (*Id.* at ¶ 5.)

I.        **Legal Standard : Summary Judgment**

A movant seeking summary judgment must inform the court of the basis of his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material; i.e., only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The movant need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). If it is evident that the party seeking summary judgment against one who bears the proof burden has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted to rely upon the complete absence of proof of an essential element. *Fontenot v. Upjohn,* 780 F.2d at 1195. If the

moving party fails to meet its initial burden, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant meets his burden, the burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R.Civ. P. 56(c). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R.Civ. P. 56(e); *Anderson*, 477 U.S. at 256-157. The non-movant may point to evidentiary documents already in the record that set out specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Furthermore, the non-movant does not likewise have to present its own evidence, but may point out genuine issues of fact extant in the summary judgment evidence produced by the movant, if any. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).

## II.        Factual and Procedural Background

DeLeon filed the instant action on July 13, 2004. (Doc. 1.) Plaintiff's Second Amended Original Complaint (Doc. 6), filed August 19, 2004, brought pursuant to Title VII, the Civil Rights Act of 1964 and 1991, 42 U.S.C. § 2000e, *et seq.*, the Pregnancy Discrimination Act (42 U.S.C. § 2000e(k)), and the Texas Commission on Human Rights Act, alleged causes of action for pregnancy discrimination, sexual discrimination and disparate treatment, retaliation, and intentional infliction of emotional distress. (Doc. 6, ¶¶'s 3, 15 -22.)

Clear Lake argues DeLeon cannot establish a *prima facie* case of pregnancy discrimination, that Clear Lake possessed a legitimate, non-discriminatory reason for discharging Plaintiff, and that DeLeon cannot show that Clear Lake's reasons are pretextual or that the hospital was motivated by any impermissible reason.

**(A) Hospital Policy**

Clear Lake Regional Medical Center, the Hospital, is located in Webster, Texas. (Doc. 16, Laura Jaweed Aff., Ex. A, ¶ 1.) DeLeon was hired by the Hospital on July 28, 2003 as a Rehabilitation Technician, and at all times relevant to this lawsuit she was supervised by Laura Jaweed, Director and Department Head for Rehabilitation Services. (*Id.* at ¶¶'s 2-3.) Plaintiff was scheduled to work full time at the Hospital, from approximately 8:00 a.m. until 5:00 p.m., Mondays through Fridays. (*Id.* at ¶ 4; DeLeon Depo., Ex. B, p. 89:7-18.)

Upon her hire, DeLeon understood not only the attendance expectations of Ms. Jaweed and the Hospital, but also that the Hospital's specific attendance policy required that if she were going to be unable to report to work as assigned, she must personally notify her supervisor or department head immediately; that, if Plaintiff was ill and unable to report to work, she should advise her immediate supervisor or department head of her status and estimated date of return on a daily basis; and she admitted during her deposition that this policy was fair, because she agreed that an employer should be able to plan and schedule other employees to work. (Doc. 16, DeLeon Depo., Ex. B, pp. 58:6-20, 59:18-60:7, 60:24-61:14, 61:24-62:5, 62:24-66:4, 68:7-25, 89:7-18; *See also* Depo. Ex. 13.)

DeLeon was also aware of the Hospital's policy prohibiting unlawful discrimination during her employ and agreed during her deposition that she believed the Hospital actually followed its nondiscrimination policy. (Doc. 16., Ex. B, p. 69:3-69:16.)

**(B) Instances of Perjury**

The Hospital points out that DeLeon represented in her Application for Employment that she had never been discharged from a job (Doc. 16, Ex. B. pp. 19:23-20:2, 22:22-23:18), when in fact she admitted during her deposition that she had received numerous disciplinary actions from prior employers for tardiness and excessive absenteeism, including two terminations (*Id.* at 23:22-27:24; 32:18-22, 33:22), and she admitted lying on her Application for Employment to the Hospital (*Id.* at p. 43:13-15), conduct amounting to perjury according to the Hospital.

For instance, DeLeon, while acknowledging the truth of her responses under oath, swore (a) she had never had attendance, tardiness, or discipline problems with any prior employers (*Id*. at 19:23-20:2, 22:22-23:16); (b) that the only reason she left her prior employer (Humpal Physical Therapy) was due to a move and no other reason (*Id*. at p. 22:17-23:3); and (c) that she had never been fired (*Id*. at p. 23:17-18). However, DeLeon admitted, upon being shown documentary proof, that she had just lied during her deposition (*Id*. at 24:7-15); she admitted she had been disciplined by her previous employer for a history of unexcused absences and for lying regarding absences (*Id*. at 25:4-28:2); and she admitted she had been suspended and terminated twice for absenteeism (*Id*. at 27:7-24, 32:18-22); and she had been counseled by a prior employer for failing to contact her boss to advise if she were going to be late or absent (*Id*. at 30:13-32:7). Counsel for the Hospital asserts he has omitted the numerous further instances of blatant perjury committed by Plaintiff. (*Id*. at n. 22.)

### (C) History of Termination in Instant Action

On or about September 12, 2003, Plaintiff was counseled about excessive absenteeism, claimed she understood that her attitude about such things needed to improve, and she was placed on probation for having three and a half (3.5) unexcused absences in her first six weeks of employment, which should have resulted in her termination under the previously described policies. (Doc. 16, Jaweed Aff., Ex. A, ¶ 5; DeLeon Depo., Ex. B, pp. 77:23-78:6, 78:23-79:19; *See also* Depo. Ex. 19.)

### 1. January 2, 2004 (Friday)

On January 2, 2004 (a Friday), after Plaintiff failed to report for work, Donna Stanley (assistant to Ms. Jaweed) left several messages for Plaintiff at her residence inquiring as to her whereabouts. (*Id*., DeLeon Depo., Ex. B, pp. 146:9-147:20; Stanley Aff., Ex. C, ¶ 3.) DeLeon was scheduled to work on January 2 beginning at 8:00 am, as well as January 5 through 7 (Monday through Wednesday), 2004. (*Id*., DeLeon Depo., Ex. B, p. 89:19-25, 136:5-13.)

Plaintiff admitted during her deposition that she had turned her ringer off at that time. (*Id.* DeLeon Depo., Ex. B, p. 147:17-20.) Accordingly, Ms. Stanley contacted the apartment manager where Plaintiff lived to have her wake Plaintiff and return the calls. (*Id.*, DeLeon Depo., Ex. B, pp. 146:9-20, 147:13-16; Stanley Aff., Ex. C, ¶ 3.) At approximately 11:00 a.m. (three hours after the start of Plaintiff's shift), Plaintiff finally returned Ms. Stanley's calls, misrepresented that she had a doctor's appointment that day, and agreed to call Ms. Stanley back that same day to advise if she would be reporting for any part of her shift that day (January 2). (*Id.*, DeLeon Depo., Ex. B, pp. 148:6-22, 149:5-13; Stanley Aff., Ex. C, ¶ 3.) After she spoke with Ms. Stanley, Plaintiff then called to try to obtain a doctor's appointment and learned that her doctor's office was closed on January 2. (*Id.*, DeLeon Depo., Ex. B, p. 151:4-25) Though Plaintiff asserts she advised the Hospital that she had learned the office was closed and that she would not be going in until Monday, neither Laura Jaweed nor Donna Stanley claimed to have received notice of her status on January 2. (*Id.*, DeLeon Depo., Ex. B, p. 152:1-154:5, 154:25-155:7; Jaweed Aff., Ex.A, ¶ 6; Stanley Aff., Ex. C, ¶ 3.)

### 2.    January 5 – 8, 2004 (Monday through Wednesday)

Likewise, on Monday January 5, Plaintiff failed to report or give notice to the Hospital that she would not be at work that day either. (*Id.*, DeLeon Depo., Ex. B, p. 154:12-24; Jaweed Aff., Ex.A, ¶ 7; Stanley Aff., Ex. C, ¶ 4.) This constituted another violation of the Hospital's policy. (*Id.*, Jaweed Aff., Ex. A, ¶ 7.) Again, Ms. Stanley contacted Plaintiff at home to ask why she had not heard from Plaintiff on Friday and why she had failed to report for work on Monday, to which DeLeon responded that she now had a doctor's appointment for later that day (Monday) and that Plaintiff would come by the workplace to advise of her status after her appointment. (*Id.*, DeLeon Depo., Ex. B, p. 155:8-20; Stanley Aff., Ex. C, ¶ 4.) Plaintiff called Ms. Stanley after her appointment (Monday) to tell her that she would be having a medical procedure performed the next day (Tuesday), as her baby had lost its heartbeat and she had miscarried, and during this conversation she stated she might be able to return "the next day or

Tuesday," after the procedure, but that she "didn't know," at which point Ms. Stanley instructed her to contact the hospital after the procedure to give an update and advise when she could return to work, consistent with the Hospital's attendance policy. (*Id.*, DeLeon Depo., Ex. B, p. 158:2-159:21; Stanley Aff., Ex. C, ¶ 4.)

The next day (Tuesday, January 6), however, once again DeLeon failed to adhere to the Hospital's attendance policy and Ms. Stanley's instruction by failing to contact the Hospital to advise that she would not report for work or to provide her status, and she *admitted* during her deposition that this failure constituted a violation of the Hospital's attendance policy. (*Id.*, DeLeon Depo., Ex. B, p. 171:11-172:2, 173:20-174:2; Jaweed Aff., Ex. A, ¶ 8; Stanley Aff., Ex. C, ¶ 5.) The following morning (Wednesday, January 7), DeLeon failed again to report for work or contact the Hospital to advise of her absence or status, forcing Ms. Stanley to once again track down Plaintiff to ask Plaintiff to call her and learn of her status. This conduct constituting a violation of the Hospital's attendance policy. (*Id.*, DeLeon Depo., Ex. B, p. 176:14-177:17, 173:20-174:2; Jaweed Aff., Ex. A, ¶ 9; Stanley Aff., Ex. C, ¶ 5.) DeLeon agrees that she was scheduled to work on January 5, 6, and 7th, 2004, which was a Monday, Tuesday, and Wednesday. ((*Id.*, DeLeon Depo., Ex. B, p. 89:22-25.)

### 3. Plaintiff Terminated for Violation of Attendance Policy

Later in the day on January 7, 2004, Plaintiff's employment with the Hospital was terminated for her violations of the Hospital's attendance policy, specifically for failure to call her supervisor on a daily basis to advise that she would be absent, and to provide her status and her estimated date of return on January 2, 5, 6, and 7, 2004. (*Id.*, DeLeon Depo., Ex. B, p. 181:2-17; 186:13-15; Jaweed Aff., Ex. A, ¶ 9.) Plaintiff agreed during her deposition that, in retrospect, she could have kept the Hospital more informed of her ability to come to work. (*Id.*, DeLeon Depo., Ex. B, p. 186:4-7.) The Hospital, through Ms. Jaweed, avers that absolutely no part of the decision to terminate Plaintiff had anything to do with a pregnancy or pregnancy related condition. (*Id.*, Jaweed Aff., Ex. A, ¶ 10.)

**III.     Analysis**

    **(A) The Pregnancy Discrimination Act**

Plaintiff brings suit against the Hospital pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA claims"), and the Texas Commission on Human Rights Act (TCHRA). The pregnancy discrimination claim under the TCHRA need not be separately analyzed, as the same Title VII precedent is applicable. *See Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, n. 10 (5th Cir. 2001), *cert denied*, 535 U.S. 1078 (2002).

"The PDA does not protect a pregnant employee from being discharged for being absent from work even if her absence is due to pregnancy or to complications of pregnancy, unless the absences of nonpregnant employees are overlooked." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (*citing Dormeyer v. Comerica Bank-Ill.*, 223 F.3d 579, 583 (7th Cir. 2000); *See also Wallace*, 271 F.3d at 223 (noting that the PDA "requires the employer to ignore an employee's pregnancy, but . . . not her absence from work, unless the employer overlooks the comparable absences of non-pregnant employees." *citing Marshall v. Am. Hosp. Ass'n*, 157 F.3d 520, 526 (7th Cir. 1998)).

    **(B) Analytical Framework**

A claim under the PDA is analyzed like any other Title VII discrimination claim. *Garcia v. Women's Hosp.*, 97 F.3d 810, 812-813 (5th Cir. 1996). Title VII or PDA discrimination can be established through either direct or circumstantial evidence. *See Wallace*, 271 F.3d at 219.

The Hospital argues that DeLeon has at most, weak circumstantial evidence in the instant action, and hence it wishes to analyze DeLeon's claims under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 441 U.S. 792, 802 (1973). Under this framework, a plaintiff must first create a presumption of discrimination by making out a *prima facie* case, *Wallace*, 271 F.3d at 219, which entails establishing that: "(1) she was a member of a protected class, (2) she was qualified for the position she lost, (3) she suffered an adverse

employment action, and (4) that others similarly situated were more favorably treated." *Urbano v. Continental Airlines*, 138 F.3d 204, 206 (5th Cir. 1998). The employer must then produce a legitimate nondiscriminatory reason for the adverse employment action, which causes the presumption to dissipate. *Wallace*, 271 F.3d at 219. In *Reeves v. Sanderson Plumbing Prods., Inc.*, the Court stated that under Title VII, a plaintiff's *prima facie* case, "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

The test utilized in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), a "mixed-motive" theory of discrimination, used to come into play where *direct*[1] evidence of discrimination is presented, but the employer asserted that the same adverse employment decision would have been made regardless of discrimination. *Mooney v. Aramco Serv's. Co.*, 54 F.3d 1207, 1216, n. 10. (5th Cir. 1995).[2] Though *Price Waterhouse* can be characterized as a method to prove discrimination, the mixed-motives theory is probably best viewed as an affirmative defense for the employer. *Id.* at 1216. However, in *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003), the Supreme Court unanimously held that in the context of Title VII, as amended by Congress in 1991, "direct evidence of discrimination is not required in mixed-motive cases." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 (5th Cir. 2004). In order to withstand summary judgment, Title VII requires that DeLeon, using direct or circumstantial evidence, "present sufficient evidence for a reasonable jury to conclude . . . that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Desert Palace*, 539 U.S. at 101. Presumably, in this case, *Desert Palace* may apply through use of the terms "because of sex" or "on the basis of sex" to

---

[1] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

[2] In the *Price Waterhouse* framework ... the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production. Both the burden of production and the risk of nonpersuasion are shifted to the defendant who, because of the inference the overt evidence showing the employee's bias permits, must persuade the factfinder that even if discrimination was a motivating factor in the adverse employment decision, it would have made the same employment decision regardless of its discriminatory animus. (*citing Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3rd Cir. 1994)).

include "because of or on the basis of pregnancy, childbirth, or related medical conditions." *See* 42 U.S.C. 2000e(k). In *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (*citing Rachid,* 376 F.3d at 312), the Fifth Circuit Court of Appeals adopted a "modified *McDonnell Douglas* approach" in cases where the mixed-motive analysis may apply. After the plaintiff has met his four-element *prima facie* case and the defendant has responded with a legitimate nondiscriminatory reason for the adverse employment action

> The plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. (mixed-motives alternative). *Id.* (*citing Rachid*, 376 F.3d at 312.)

The question of pretext versus mixed-motive treatment is only reached after a plaintiff has met his *prima facie* showing under the modified *McDonnell Douglas* standard and the defendant has responded with a legitimate nondiscrimatory reason. *Id*. Thereafter,

> [i]f the plaintiff demonstrates the protected characteristic was a motivating factor in the employment decision (meets the mixed-motive showing), which pursuant to *Desert Palace* may be achieved through circumstantial evidence, *Rachid*, 376 F.3d at 311-12) it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails." *Id.* at 312 (internal quotation marks and citation omitted).

*Keelan*, 407 F.3d at 341.

### 1. DeLeon Cannot Establish a *Prima Facie* Case

The Hospital aims at showing that the court need not even advance far under the modified *McDonnell Douglas* approach, because DeLeon has not made out a *prima facie* case of discrimination. (Doc. 16, p. 10.) The Hospital asserts that under the fourth prong of that standard, Plaintiff has not shown and has no evidence that the Hospital treated Plaintiff differently under the Hospital's policy than nonpregnant employees. *Id*. The Hospital asserts it treated DeLeon in exactly the same manner it would have treated any other worker who was absent without notifying the Hospital. (*Id*., Jaweed Aff., Ex. A, ¶ 10.) DeLeon stated at her deposition that she was unaware of a single other person employed by the Hospital who violated the attendance policy like herself who was not terminated. (*Id*., DeLeon Depo., Ex. B, p. 194:20-196:6.) Without a showing

that an employer adhered to the requirements of the employment policy in only cases involving its pregnant workers, DeLeon cannot maintain that she was a victim of discrimination under the PDA.  *Urbano*, 138 F.3d at 206.  The Hospital is entitled to Summary Judgment on this ground.  However, the Hospital is also entitled to summary judgment because DeLeon has filed no responsive pleading to the Hospital's Motion for Summary Judgment, and the Hospital's stated legitimate reason for her termination therefore remains unrebutted and because she has not shown otherwise that the Hospital was motivated by DeLeon's "pregnancy related condition" or pregnancy in terminating her.  (Doc. 16, pp. 11-12)  The Hospital has presented its policies and requirements for absences from work, as described *supra*, and DeLeon has provided no evidence of pretext or improper motive.  DeLeon's subjective beliefs regarding the Hospital's actions would be insufficient.  Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence.  *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1986); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825 (1992).  When the moving party has carried its burden under Fed. R. Civ. P. 56(c), its opponent must do more than simply show that there is "some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *DeLuca v. Atlantic Refining, Co.,* 176 F.2d 421, 423 (2nd Cir. 1949)(L. Hand, J.), by "conclusory allegations," *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990), by "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**IV.    Conlcusion**

Based upon the Defendant's arguments, the court's review of the applicable precedent, and because Plaintiff has not filed an opposition to Defendant's motion,

Accordingly, it is hereby

ORDERED that Defendant Clear Lake Regional Medical Center, Inc.'s Motion for Summary Judgment and Brief in Support (Doc. 16) is GRANTED; and, it is further

ORDERED that the Clerk's Office is ordered to add the following address to its records and must send Plaintiff, Evette Deleon, a certified copy of this Memorandum and Order to this following address:

>  Evette Deleon
>  31 Laurel
>  Alice, Texas 78332-6632

SIGNED at Houston, Texas, this 18th day of October, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE